UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION
_____

LEAH EVELYN MOYER,

                Plaintiff,                No. _____

v.                                    Hon. _____
                                    U.S. District Judge

PROFORMA MECHANICAL INC.,
  d/b/a Crown Jewel Auto, and,
  d/b/a Crown Jewel Auto Sales,
CEBO INVESTMENT GROUP INC., and,
CHRISTOPHER LAWRENCE WAGNER,

                Defendants.

_____/

**COMPLAINT and JURY DEMAND**

I.     **Introduction**

    1.  Plaintiff, the purchaser of an automobile under an installment sales contract, brings this Complaint against: 1) the automobile dealership that sold her the car; 2) the finance company that purchased the installment sales contract; and, 3) an owner, officer and director of both the auto dealership and the finance company.  This Complaint is brought to redress the defendants' violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1638, *et seq.*, the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, *et seq.,* Michigan's Motor Vehicle Sales Finance Act ("MVSFA"), M.C.L. § 566.301, *et*

1

*seq.*, Michigan's Motor Vehicle Installment Sales Contract Act ("MVISCA"), M.C.L. §
566.301, *et seq.*, along with the defendants' acts of common law conversion, statutory
conversion pursuant to M.C.L. § 600.2919a, and usury in violation of M.C.L. §
445.1854(1).

## II.  Jurisdiction and Venue

2.  This Court has jurisdiction under 28 U.S.C. § 1331 (federal question) and has
supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367.
Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

3.  This Court has jurisdiction under 15 U.S.C. § 1640(e) of plaintiff's claims
under the Truth in Lending Act.

4.  This Court has jurisdiction under 15 U.S.C. § 1691e(f) of plaintiff's claims
under the Equal Credit Opportunity Act, including under 15 U.S.C. § 1691e(c) of
plaintiff's claims for equitable and declaratory relief under that Act.

5.  Venue is appropriate in this judicial district for the reasons that the defendants
at all relevant times transacted business here, the pertinent events took place here, and
the plaintiff resides here.

## III.  Parties and Relevant Actors

6.  Plaintiff Leah Evelyn Moyer (hereafter "Ms. Moyer") is a natural person,
residing in the City of Grand Rapids, Kent County, Michigan.

7.  Ms. Moyer is a "person" and "consumer" as the terms are defined and used in
the Truth in Lending Act, 15 U.S.C. § 1602(d) and (I).

8.  Ms. Moyer is an "person" as the term is defined and used in the ECOA, 15
U.S.C. § 1691a(f).

2

9.  Ms. Moyer is an "installment buyer", "buyer", and "person" as the terms are defined and used in the MVSFA, M.C.L. § 492.102(h) and (n).

10.  Ms. Moyer is a "person" and "buyer" as the terms are defined and used in the MVISCA, M.C.L. § 556.301(e) and (k).

11.  As regards Ms. Moyer, the transaction described herein was exclusively for her personal, family and household purposes.

12.  Defendant Proforma Mechanical Inc. (hereafter "Proforma") is a foreign profit corporation registered with the Florida Department of State (# P13000034378) and registered to do business in Michigan with the Michigan Department of Licensing and Regulatory Affairs (LARA) and assigned ID # 60607F.  Proforma does business under an assumed name, Crown Jewel Auto (hereafter "Crown Jewel"), registered as such with LARA.  Proforma also does business under a different assumed name, Crown Jewel Auto Sales, but is not registered with LARA to do business under that name. According to LARA, the resident agent for service of process upon defendant Proforma in Michigan is Grand Rapids Plastics Inc., 4240 Roger B. Chaffee Memorial Drive, Grand Rapids, Michigan 49548.  The registered office of Proforma in Michigan is the foregoing address.  Proforma is licensed by the Secretary of State for the State of Michigan to sell used motor vehicles at retail (License # B204149).  Proforma is licensed by the State of Michigan, Department of Insurance and Financial Services (DFIS) as a motor vehicle dealer originating installment sales contracts to customers purchasing motor vehicles on credit and, as such, defendant Proforma is licensed by DFIS as an installment seller.  (License # IS-0019111).

13.  At all times relevant hereto, defendant Proforma did business as Crown

3

Jewel Auto and also as Crown Jewel Auto Sales at 2924 South Division Avenue, Grand

Rapids, Michigan, and engaged in the sale of motor vehicles to customers, regularly

extended credit to customers who purchased motor vehicles, and regularly executed

retail installment sales contracts subject to a finance charge or payable in four or more

installments.

14.  Defendant Proforma is a "creditor" as that term is defined and used in the

Truth in Lending Act for the reason that the Act defines "creditor" as the "person to

whom the debt arising from the consumer credit transaction is initially payable on the

face of the evidence of indebtedness."  15 U.S.C. § 1602(g)(2).  In this case, the retail

installment sales contract named Crown Jewel Motors an assumed name of defendant

Proforma.  Thus, defendant Proforma was a "creditor" in the transaction according to

TILA, 15 U.S.C. § 1602(g)(1).

15.  Defendant Proforma is a "creditor" as the term is defined in the ECOA, 15

U.S.C. 1691a(e).

16.  Defendant Proforma is an "installment seller" or "seller" as the terms are

defined and used in the MVSFA, M.C.L. § 492.102(j).

17.  Defendant Proforma is a "person" and "seller" as the terms are defined and

used in the MVISCA, M.C.L. § 556.301(d) and (k).

18.  Defendant CEBO Investment Group Inc. (hereafter "CEBO") is a foreign

profit corporation registered with the Florida Department of State (# P13000041401)

and registered with LARA to do business in Michigan (ID # 60603X).  According to the

Florida Department of State, the Florida resident agent for CEBO is Incorp Services

Inc., 17888 67th Court North, Loxahatchee, Florida 33470.  CEBO's principal Florida

4

address is 268 San Paulo Circle, #17, West Melbourne, Florida 32904.  According to

the Florida Department of State, CEBO's mailing address is P.O. Box 8771, Grand

Rapids, Michigan 49518.  According to LARA, the resident agent for defendant CEBO in

Michigan is Incorp Services Inc., 2285 South Michigan Road, Eaton Rapids, Michigan

48827.

19.  Defendant CEBO engages in the business of financing installment sale

contracts made between defendant Proforma and its customers who purchase motor

vehicles pursuant to credit sales contracts.

20.  Defendant CEBO is in the business of acquiring, investing in, and lending

credit on the security of defendant Proforma's motor vehicle credit sales contracts by

discount, purchase, assignment and otherwise.

21.  Michigan's Motor Vehicle Sales Finance Act (MVSFA), M.C.L. § 492.101, *et

seq.*, requires that defendant CEBO be licensed to engage in the activities described in

paragraphs 19 and 20, *supra*.

22.  Defendant CEBO holds no license for its activities described in paragraphs

19 and 20, *supra*, and thus, defendant CEBO's activities are prohibited by the MVSFA,

M.C.L. § 492.103(b).

23.  Defendant CEBO holds no license under Michigan's Consumer Financial

Services Act (CFSA), M.C.L. § 487.2051, *et seq.*, and thus, defendant CEBO's activities

described in paragraphs 19 and 20, *supra*, are prohibited by the CFSA, M.C.L. §

487.2053.

24.  Defendant CEBO is a "creditor" as that term is defined and used in the Truth

in Lending Act, 15 U.S.C. § 1602(g).

25.  Defendant CEBO is a "creditor" as that term is defined and used in the Equal Credit Opportunity Act for the reason that it is the assignee of the credit sale contract between Ms. Moyer and defendant Proforma. 12 C.F.R. § 202.2(f).

26.  Defendant CEBO is a "finance company" as the term is defined and used in the MVISCA, M.C.L. § 556.301.

27.  Defendant Christopher Lawrence Wagner (hereafter "Wagner") is a natural person purportedly residing in the City of Grand Rapids, Kent County, State of Michigan.

28.  Defendant Wagner is an owner (incorporator), officer (president), director and shareholder of both defendant Proforma and defendant CEBO as indicated, in part, by the Florida Department of State and as indicated, in part, by LARA.

29.  At all times relevant to this cause, an attorney identified as Matthew David Herman ("Attorney Herman") represented defendant CEBO in a debt collection action in the State of Michigan, 61st Judicial District Court in Grand Rapids, Michigan, titled *CEBO Investment Group, Inc. v. Kiara Shardae Adams*, 61st Judicial District Court No. 14-GC-2711.

30.  At all times relevant to this cause, Attorney Herman acted as the agent for the defendants in his representation of them in the foregoing law suit and his activities on behalf of the defendants were, directly and indirectly, within the course and scope of that agency relationship.

**IV**    **General Allegations**

31.  During or around February 2014, plaintiff Leah Moyer went to Crown Jewel Auto on South Division Avenue in Grand Rapids, Michigan for the purpose of

6

purchasing a motor vehicle.

32.  A representative of Crown Jewel showed Ms. Moyer a vehicle on the Crown Jewel sales lot that Ms. Moyer was interested in purchasing, to wit, a 2008 Saturn Outlook, VIN XXXXXXXXXXXX0455.

33.  The representative of Crown Jewel requested that Ms. Moyer provide information, which information Ms. Moyer provided, and that information was included upon a credit application.

34.  At the foregoing time, Ms. Moyer and a representative of Crown Jewel and, therefore, acting of behalf of defendant Proforma, purportedly arranged a credit sale transaction whereby the plaintiff would purchase the foregoing automobile according to a credit sale contract, although Ms. Moyer was not given a copy of any contract.

35.  The transaction between Ms. Moyer and defendant Proforma, doing business as Crown Jewel was a "consumer credit transaction" as that term is defined in the Truth in Lending Act, 15 U.S.C. § 1602(h) and Regulation Z, 12 C.F.R. § 226.2(a)(12).

36.  The transaction between Ms. Moyer and defendant Crown Jewel was a "closed-end credit transaction" as at term is defined in 12 C.F.R. §§ 226.17 through 226.24.

37.  Ms. Moyer made payments according to the amount and frequency of payments, including "late charges" for delinquent payments, that she was told to make by representatives of defendant Proforma and defendant CEBO.

38.  Ms. Moyer began experiencing transmission problems with the 2008 Saturn and contacted the defendants to ask about a warranty contract that covered repairs that

she thought she had purchased when she bought the 2008 Saturn.

39.  Ms. Moyer spoke with a representative of defendants Proforma, CEBO and Wagner, who directed Ms. Moyer to speak directly with defendant Wagner about any warranty that might have been purchased upon the 2008 Saturn.

40.  Ms. Moyer spoke with defendant Wagner, who falsely stated to Ms. Moyer that he was required to retain the written warranty contract that Ms. Moyer had purchased at the time she purchased the 2008 Saturn.

41.  Subsequent to speaking with defendant Wagner, Ms. Moyer became concerned about the amount of money that defendants CEBO and Wagner continued to claim was upon the contract and requested of defendants Proforma, CEBO and Wagner a copy of her sales contract.

42.  During April 2016, defendants Proforma, Cebo and Wagner gave to Ms. Moyer a copy of a credit sales contract.

43.  A true and accurate copy of the credit sales contract that was given to Ms. Moyer by those defendants is attached hereto, made a part hereof and labeled Exhibit A.

44.  The first time that Ms. Moyer saw the credit sales contract that is attached as Exhibit A was during April 2016, when she was given that contract by defendants Proforma, CEBO and Wagner.

45.  It is the habit, routine and practice of defendants Proforma, CEBO and Wagner not to provide consumers like Ms. Moyer with copies of documents, and not to let them keep documents to which they are entitled.

46.  The foregoing assertion is born out by Ms. Moyer's not having received at or

8

near the time of the purchase of her motor vehicle, a copy of a credit sales contract, her warranty contract, as well as defendants Proforma, CEBO and Wagner's requiring that the plaintiff return to them the title to the motor vehicle she purchased, once she had received the title from the Michigan Department of State for the Saturn. (See, Exhibit B attached hereto, indicating that the title to plaintiff's motor vehicle was returned to her by the MI-SOS upon the title's being found in the possession of those defendants during the investigation of the defendants by the Michigan Department of State.)

47. Exhibit A, the credit sales contract given to the plaintiff indicated that the "total purchase price" for the 2008 Saturn was $15,800, with a down payment of $6100 and that "Buyer promise (sic) to satisfy the amount offered, by paying the sum of $11,846.00" in monthly payments of $321.56 until the foregoing sum was paid in full."

48. The credit sales contract attached as Exhibit A, although purportedly bearing the plaintiff's signature was never signed by her and the purported signature of the plaintiff thereon is a forgery.

49. The forgery of the credit sales contract, Exhibit A, rendered it a *voidable* contract, upon which Ms. Moyer might not have cause to complain.

50. On or about March 22, 2016, Ms. Moyer ratified that contract by making payment upon it.

51. A true and accurate copy of the money order and note reflecting that ratification is attached hereto, made a part hereof and labeled Exhibit C.

52. At or near the time of the purchase transaction, defendant Proforma submitted to the Michigan Department of State (MI-SOS) an Application for Michigan Title and Registration indicating that the sale price of the 2008 Saturn was $10,800, that

9

the total delivered price of the vehicle was $11,476, that the plaintiff provided a down payment of $6000 (mis-stated as $60,000), and that the total amount of the finance contract was $4708.

53.   A true and accurate copy of the Application for Michigan Title and Registration that identifies the amounts in the preceding paragraph is attached hereto, made a part hereof and labeled Exhibit D.

54.   The economic substance of the sales transaction and its true nature, not its form, are determinative of whether the Truth in Lending Act and other remedial statutes apply to the credit sales contract, Exhibit A, and the transaction described herein. *Adams v. Plaza Fin. Co.,* 168 F.3d 932 (7th Cir. 1999).  In this instance, the contract, Exhibit A, is subject to the Truth in Lending Act, the Equal Credit Opportunity Act, Michigan's Motor Vehicle Sales Finance Act, and all of the claims the plaintiff makes inasmuch as the substance of the transaction supersedes its form.

55.   At some following the purchase of the plaintiff's motor vehicle described above, defendant Proforma assigned the right to collect payments upon the contract for the vehicle's purchase to defendant CEBO.

56.   At all relevant times hereto, defendant Wagner, as the owner (incorporator), officer (president), director and shareholder, participated in, closely managed, supervised and ratified the activities and procedures of defendants Proforma and CEBO in this matter, and otherwise pervasively controlled the day-to-day affairs of the overlapping business interests of those defendants.

57.   At all times relevant hereto, defendant Wagner had knowledge of the events described in this Complaint, participated as described in those events, had knowledge

10

of the terms of the credit sales transaction, including the document identified as Exhibit A, and participated in the preparation of that credit sales contract on behalf of defendant Proforma.

58.   At all relevant times hereto, defendant Wagner participated in the subsequent assignment and transfer by defendant Crown Jewel, as *assignor* of the contract credit sale contract, to defendant CEBO.

59.   At all relevant times, defendant Wagner, having knowledge of the terms of the credit sales contract (Exhibit A), having participated in the preparation of that credit sales contract and knowing its terms, knew the terms of the contract that defendant CEBO was purchasing, acquiring, investing in, and extending credit upon, as the *assignee* of that contract.

60.   At all relevant times, all of the defendants acted as agents, one for the other.

61.   Defendants Proforma, CEBO, and Wagner are the alter-egos of each other.

62.   Defendants Proforma and CEBO are the alter-egos of defendant Wagner.

63.   Because state and federal consumer protection law expressly provide the means to hold individuals liable for violations of the consumer protection law, it is not necessary to "pierce the corporate veil" in such cases to hold the individuals liable. These consumer protection laws created a framework from which the principle sometimes known as the "controlling person" doctrine evolved, which permits courts to hold individuals personally liable for the acts of the corporation.

64.   The controlling person doctrine was described in and likely first enunciated in *Federal Trade Commission  v. Standard Education Society*, 302 U.S. 112 (1937), wherein the Supreme Court held that "a command to the corporation is in effect a

11

command to those who are officially responsible for the conduct of its affairs." 302 U.S. at 119.

65.  Defendant Wagner is such an individual as a controlling person, vis-a-vis defendants Proforma and CEBO.

66.  Ms. Moyer did not know, nor could she have known, that the defendants and each of them violated her rights and continued to do so under the federal and state statutes enacted for her protection when she purchased her motor vehicle and executed the credit sale contract during 2014 for the reason that she was not provided, contrary to the requirements of the Truth in Lending Act, a copy of any sales documents, including a credit sales contract, at the time of her purchase of the motor vehicle as described above.  The violations claimed herein continue to the date of the filing of this Complaint and Jury Demand.

67.  The defendants, and each of them, engaged in a habit, routine and practice of fraudulent activity in concealing from Ms. Moyer information at the time of the sales transaction, refusing to provide her documents to which she was entitled such as a credit sales contract and warranty contract, and telling her that she was required to return to the defendants the Certificate of Title to the automobile she had purchased, a proposition contrary to Michigan law. See, Exhibit B.

68.  Defendant Wagner, identified above as the alter-ego of the other defendants, and a "controlling person" was convicted of "Embezzlement - $100,000 or More", contrary to M.C.L. § 750.1747 during the year 2011 in the State of Michigan, Kent County Circuit Court, in the matter titled *State of Michigan v. Christopher Lawrence Wagner*, 17th Judicial Circuit Court No. 11-07310-FH.

69.  The Truth in Lending and the Equal Credit Opportunity Acts impose upon the defendants, as the creditors, affirmative obligations and duties of, among other things, disclosures and notices to Ms. Moyer as the consumer and installment purchaser in the above transaction.

<u>COUNT 1. THE TRUTH IN LENDING ACT</u>

70.  Ms. Moyer incorporates the foregoing paragraphs by reference.

71.  The Truth in Lending Act is a cornerstone of consumer credit legislation. The statute is Congress's effort to guarantee the accurate and meaningful disclosure of the costs of consumer credit and thereby to enable consumers to make informed choices in the credit marketplace and avoid abusive lending.

72.  The Truth in Lending Act violations described below and of which the plaintiff complains exist on the face of Exhibit A, the credit sales contract.

73.  Defendants Proforma, CEBO and Wagner committed material violations of TILA by failing to accurately make the following disclosures required by TILA and its implementing Regulation Z, 12 C.F.R. § 226.18: interest rate, APR, amount financed, finance charge, total of payments, and schedule of payments.

74. The defendants failed to accurately disclose the applicable "APR" as required by 15 U.S.C. § 1638; Reg. Z § 226.18(32); Reg. Z § 226.22.

75. Those disclosures were required to be made in writing, prior to the time of the purchase of the motor vehicle in a form that could be kept by Ms. Moyer so that she could  shop for credit prior to her engaging in the credit transaction.

76.  The defendants failed to make those disclosures in a timely fashion in violation of 15 U.S.C. § 1638(a).

13

77.  The defendants failed to make any of the required disclosures under the Truth In Lending Act, 15 U.S.C. § 1638(a), by reason of their forgery of the credit sales contract, Exhibit A, that contained material terms to which Ms. Moyer had not agreed.

78.  The defendants failed to make required disclosures clearly and conspicuously as required by the Truth in Lending Act.

79.  The defendants failed to accurately describe the security agreement between them and Ms. Moyer by including an illegal method of claiming that security interest (possessing the vehicle's certificate of title) and omitting terms lawfully to retain a security interest in the motor vehicle.  See, Exhibit A.

80.  The defendants failed to accurately describe their remedies upon default of the credit sales contract as related to their claimed security in Ms. Moyer's vehicle.

81.  The finance terms within the credit sales contract, Exhibit A, were usurious inasmuch as the interest rate exceeded twenty-five (25%) per cent.

82.  The disclosures that the defendants made uon the contract containing the forged signature of Ms. Moyer were materially false in that they presented her with a purported contract containing terms to which Ms. Moyer did not agree.  There is no greater misrepresentation that can be made than that the entire credit sales contract binds a consumer where the consumer is not so bound.

83. The facts set forth in this complaint establish that the defendants have violated the Truth In Lending Act, 15 U.S.C. § 1601 *et seq.*

**Wherefore,** plaintiff seeks judgment against defendant Midwest Motors for:

(a)      A declaratory judgment that the defendants have violated the TILA;

(b)      Actual damages pursuant to 15 U.S.C. § 1640(a)(1);

14

(c)     Statutory damages pursuant to 15 U.S.C. § 1640(a)(2);

(d)     Costs of this action, together with a reasonable attorney's fee, pursuant to

15 U.S.C. § 1640(a)(3); and,

(e)     Such further relief as the Court deems appropriate.

<u>COUNT 2. THE EQUAL CREDIT OPPORTUNITY ACT</u>

84.  Ms. Moyer incorporates the foregoing paragraphs by reference.

85.  Plaintiff is an "applicant" as the term is defined in the ECOA, 15 U.S.C. §

1691a(b).

86.  Defendants are each a "creditor" as the term is defined in the ECOA, 15

U.S.C. 1691a(e).

87.  Ms. Moyer completed a credit application and applied to the defendants for

credit in connection with the purchase of the foregoing motor vehicle.

88.  Based upon the execution of a credit sale contract and payment upon that

credit sale contract, Exhibit A, the defendants effectively granted credit, but withdrew

the approval when it forged Ms. Moyer's name to the contract and failed to provide any

notice of the revocation of credit.

89.  The termination or revocation of Ms. Moyer's 2014 agreement to purchase

the motor vehicle constituted adverse action for purposes of the Equal Credit

Opportunity Act, 15 U.S.C. § 1691, *et seq*.

90.  Defendants denied, took adverse action, and materially altered plaintiff's

credit, which action constituted "adverse action" as the phrase is defined in the ECOA,

15 U.S.C. §1691(d)(6), by presenting Ms. Moyer with credit terms they sought to

enforce that differed from those of the 2014 agreement with Ms. Moyer to purchase the

15

motor vehicle.

91.  Defendants failed to provide Ms. Moyer with a notice of adverse action as required by the ECOA, 15 U.S.C. § 1691(d).

92.  Upon information and belief, the defendants have inadequate policies and procedures in place to comply with the ECOA's adverse action notice and record-keeping requirements.

93.  As a result of the defendants' actions and inactions, in violation of the Equal Credit Opportunity Act, Ms. Moyer has suffered damage

>   **Wherefore,** plaintiff seeks judgment against defendants for:

(a)   A declaratory judgment that they have violated the Equal Credit Opportunity Act, 15 U.S.C. § 1691e(c);

(b)   Actual damages pursuant to 15 U.S.C. § 1691e(a);

(c)   Punitive damages in an amount not to exceed $10,000.00, pursuant to 15 U.S.C. § 1691e(b);

(d)   Costs of this action, together with a reasonable attorney's fee, pursuant to 15 U.S.C. § 1691e(d); and,

(e)   Such further relief as the Court deems appropriate.

COUNT 3. MICHIGAN'S MOTOR VEHICLE SALES FINANCE ACT

94.  Ms. Moyer incorporates the foregoing paragraphs by reference.

95.  The defendants 1) failed to disclose to Ms. Moyer all of the agreements between her, as buyer, and the defendants, collectively, as seller at the time of the purchase of the motor vehicle, and, 2) misrepresented the agreements between the parties relating to the installment sale.

16

96.  The MVSFA states: "An installment sales contract shall be in writing, and shall contain all of the agreements between the buyer and the seller relating to the installment sale of the motor vehicle sold, and shall be signed by both the buyer and the seller."  M.C.L. § 492.112(a).

97.  The defendants violated the foregoing provisions of the MVSFA.

98. The defendants failed to make any of the disclosures required by the MVSFA and instead forged Ms. Moyer's name to the retail installment contract without disclosure.

99. The defendants failed to provide Ms. Moyer with a copy of the retail installment sales contract at the time of signing.

100. The defendants imposed charges upon Ms. Moyer, among other things, a usurious interest rate, that were not authorized by the MVSFA and in violation of the MVSFA.

101. The defendants failed to properly complete all necessary terms of the installment contract as required by M.C.L. § 492.101 *et seq.*

102. Ms. Moyer has suffered injury as set forth above by reason of the defendants' violations of the MVSFA.

103.  The MVSFA states: "An installment sales contract shall not be signed by a party unless it contains all of the information and statements required by this act." M.C.L. § 492.114(a).

104.  The MVSFA states: "No act, agreement or statement by any buyer in any installment sale contract shall constitute a valid waiver of any provision of this act intended by the legislature for the benefit and protection of retail installment buyers of

17

motor vehicles."  M.C.L. § 492.132.

105.  The MVSFA requires that each retail installment contract shall separately disclose the various terms of credit, including the motor vehicle's cash price, amount of down payment, unpaid cash price balance, cost of any insurance or travel emergency benefits procured by the seller, other necessary or incidental costs which the seller contracts to pay on behalf of the buyer, principal amount financed, amount of the finance charge, the time balance and the amount and due date of each payment required.  M.C.L. § 492.113.

106.  The foregoing violation continues to date for the reason that the terms of Ms. Moyer's 2014 purchase have yet to be disclosed to her.

107.  Defendants did not comply with the disclosure requirement of the MVSFA because it misrepresented to Ms. Moyer that the terms of her original purchase were purportedly terms provided her in Exhibit A, later disclosed.

108.  Defendant CEBO is, pursuant to M.C.L. § 492.114a, subject to all claims and defense that arise against defendant Proforma or Wagner for the sale of the vehicle and is jointly liable to the extent of any payments received from Ms. Moyer upon the credit sales contract.

**Wherefore,** plaintiff seeks judgment against defendants for:

(a)  A declaration that the defendants have violated the MVSFA by not providing Ms. Moyer the terms of her original purchase,

(b)  An injunction prohibiting defendants from further violations of the MVSFA;

(d)  Reasonable costs and attorney's fees, including pre-judgment and post-judgment interest; and,

(e)     Such further relief as the Court deems appropriate.

COUNT 4.  MICHIGAN'S MOTOR VEHICLE INSTALLMENT SALES CONTRACT ACT

115. Ms. Moyer incorporates the foregoing paragraphs by reference.

117. Defendants failed to make the disclosure required by the Motor Vehicle Installment Sales Contract Act, M.C.L. § 566.302, or to obtain signature at the time of the contract they presented her in April 2016.

117.  Defendants failed to properly complete all necessary terms of the installment contract as required by M.C.L. § 566.302 *et seq*.

119. Defendants failed to substantially comply with M.C.L. § 566.302.

120. Ms. Moyer suffered damages in the amount of the finance charge imposed.

**Wherefore,** plaintiff seeks judgment against the defendants for:

(a)     A declaration that defendants have violated the MVISCA as stated above.

(b)     An injunction prohibiting defendants from further violations of the MVISCA;

(c)     Damages in the amount of the finance charges pursuant to the Motor Vehicle Installment Sales Contract Act, M.C.L. § 566.301, *et seq*.

(d)     Reasonable costs, attorney's fees, and pre-judgment interest, and,

(e)     Such further relief as the Court deems appropriate.

COUNT 5.  CONVERSION AND STATUTORY CONVERSION

121.  Ms. Moyer incorporates the preceding allegations by reference.

122.  During August 2015, Ms. Moyer received from the Michigan Department of Treasury a Garnishment Disclosure dated August 10, 2015, and informing her that Attorney Herman (West Michigan Legal Group P.C.), on behalf of defendants Proforma, CEBO and Wagner had filed a garnishment with the Michigan Department of Treasury.

123.  A true and accurate copy of the Garnishment Disclosure that Ms. Moyer received is attached hereto, made a part hereof and labeled Exhibit E.

124.  The Application for Writ of Garnishment that was dated March 19, 2015, and prepared and filed by Attorney Herman's West Michigan Legal Group PC caused the State of Michigan, Department of Treasury to prepare and send the Garnishment Disclosure.  The Application fraudulently contained the Social Security Number XXX-XX-NNNN belonging to Ms. Moyer.

125.  The above sum, $584.00, was withheld from the wages earned by Ms. Moyer from her employment as withholding taxes, but belonged to Ms. Moyer, and, pursuant to the garnishment, were wrongfully transmitted to defendant Herman and West Michigan Legal Group P.C., defendant CEBO's attorney and ultimately to the defendants.

126.  The information contained in the Garnishment Disclosure was false for the reasons that the plaintiff had never been sued by defendant CEBO or its attorney and, therefore that defendant CEBO had no money judgment against plaintiff upon which to file a garnishment, no right to file a garnishment against her for any reason.

127.  Ms. Moyer has never had a money judgment entered against her in any court.

128.  After receiving Exhibit B, the plaintiff inquired of defendant Wagner and defendant CEBO about the Garnishment Disclosure that she had received and protested that her money was wrongfully garnished by defendant Wagner and defendant CEBO for the reason that there was no judgment against her.

129.  In response to Ms. Moyer's protest, defendant Wagner stated that he was

unaware of where the garnishment came from.

130.  Hearing defendant Wagner's statement, an employee of the defendants responded to the comment with, "Chris, you know very well where that garnishment money came from."

131.  Ms. Moyer protested the defendants their keeping her money, and over her protests personally to defendant Wagner, the defendants applied to the plaintiff's credit sales contract account the foregoing sum of $584.00.

132.  Ms. Moyer had a superior possessory interest to the money that the defendants took from her withholding account with the Michigan Department of Treasury.

133.  The receipt and retention of Ms. Moyer's improperly garnished income withholding from the Michigan Department of Treasury by the defendants was common law conversion of those funds.

134.  Defendant Wagner and the other defendants knew they were not entitled to keep Ms. Moyer's wrongfully garnished state tax refund, yet still kept the funds even after demand was made by Ms. Moyer for the return of her money to her.

135.  The defendants converted the garnished funds to their own use by cashing the check representing the funds garnished and placing it into their bank accounts.

136.  The defendants' conversion was statutory conversion pursuant to M.C.L. § 600.2919a.

137.  It is the habit, routine and practice of the defendants to file false and fraudulent garnishments against consumers with the State of Michigan, Department of Treasury for the reason that the defendants engaged in identical conduct approximately

21

one year before and received from Ms. Moyer's account with the State of Michigan, Department of Treasury, money held for for her in the approximate amount of $775.00.

138.  The foregoing paragraph constitutes common law conversion and statutory conversion pursuant to M.C.L. § 600.2919a.

**Wherefore,** plaintiff seeks judgment against defendants for:

(a)  A declaratory judgment that the defendants' practices constituted conversion of plaintiff's funds held with the Michigan Department of Treasury and

(b)  Actual damages for common law conversion.

(c)  Treble damages pursuant to M.C.L. § 600.2919a; calculated as three times the amount of money the defendants converted.

(d)  Costs pursuant to M.C.L. § 600.2919a;

(e)  Reasonable attorney's fees pursuant to M.C.L. § 600.2919a; and,

(f)  Such further relief as the Court deems appropriate.

## COUNT 6.  USURY

138.  Ms. Moyer incorporates the preceding allegations by reference.

139.  The maximum interest rate permitted to be charged by the defendants in their transaction with Ms. Moyer was twenty-five (25%) percent.  M.C.L. § 445.1854(1) (civil usury) and M.C.L. 438.41 (criminal usury).

140.  The credit sale contract, Exhibit A,  was structured so as to create the appearance of carrying no interest as no interest charge was disclosed therein.

141.  The substance of credit sale contract, Exhibit A, and the true nature of the transaction reflect that the actual interest rate that the defendants charged Ms. Moyer

22

was in excess of twenty-five (25%) percent per annum.

142.  The credit sales contract was, therefore, usurious.

**Wherefore,** plaintiff seeks judgment against defendants for:

(a)     A declaratory judgment that the defendants' practices constituted usury.

(b)     Barring defendants from the recovery of any interest, official fees, delinquency or collection charges.

(c)     Disgorging from the defendants the interest fees that Ms. Moyer has paid them.

(d)     Awarding Ms. Moyer her costs and attorney fees in enforcing this claim.  All of the foregoing pursuant to M.C.L. § 438.4, and,

(e)     Such other relief as the Court deems appropriate.

## Demand for Trial by Jury

Plaintiff demands trial by jury.

Respectfully submitted

Dated: March 31, 2016

/s/ Anthony J. Valentine
Anthony J. Valentine
Attorney at Law
Attorney for Plaintiff
Ste. 227, 29 Pearl Street, N.W.
Grand Rapids, MI 49503
(616) 288-5410
*tonyvalentinelaw@gmail.com*